[Civ. No. 957.   Fifth Dist.   July 22, 1968.]

LENA K. ANDERSON, Plaintiff and Appellant, v. SOUTH-ERN PACIFIC COMPANY, Defendant and Respondent.

Perkins, Carr & Anderson and Frances Newell Carr for Plaintiff and Appellant.

John J. Corrigan and Donald O. Roy for Defendant and Respondent.

STONE, J.—Plaintiff appeals from a judgment in a declaratory relief action that stemmed from prior litigation in which plaintiff's husband filed an action against Southern Pacific Company, defendant herein, for personal injuries. He lost the suit, and Southern Pacific was awarded costs in the sum of $1,671.06. Anderson appealed from the judgment and Southern Pacific caused an abstract of the judgment for its costs to be recorded, which became a lien against a parcel of real property situated in Sacramento County that Anderson and his wife owned as joint tenants. Mr. Anderson died while the appeal was pending.

Plaintiff, surviving joint tenant, tentatively agreed to sell the property. The North American Title Corporation, with whom an escrow was opened, advised her of the judgment lien which it considered a cloud on the title. Plaintiff consulted her attorneys, who had represented her husband in the personal injury action. Attorney Anderson (no relation) asked his partner, Mrs. Carr, to telephone the attorney who was handling the litigation for Southern Pacific in an effort to work out an arrangement that would permit the sale to be consummated and a policy of title insurance issued.

It is apparent that neither the title company nor plaintiff's attorneys were aware of the principle of law, expressed in *Zeigler* v. *Bonnell*, 52 Cal.App.2d 217 [126 P.2d 118], that a judgment lien attaches to the interest of only the joint-tenant debtor, a lien which terminates if the joint tenant dies with no levy having been made upon his interest prior to death. Acting under the belief the lien was still valid despite the death of plaintiff's husband, Mrs. Carr communicated with Mr. Plant, counsel for defendant. He agreed to a release of the lien provided the title company as escrow holder withheld sufficient funds to cover Southern Pacific's judgment in the event it was successful in the appeal then pending. Mrs. Carr agreed to this proposal.

Thereafter Mrs. Carr discovered the *Zeigler* case and discussed it with Mr. Anderson, her partner, who called Mr. Plant and advised him there was no longer a lien against plaintiff's property because of the death of the joint-tenant debtor. Mr. Anderson purported to rescind the agreement to withhold funds in escrow until the pending appeal was determined, and advised Mr. Plant that plaintiff would agree to the withholding of funds in escrow until the validity of the lien was litigated. Mr. Plant denied that he agreed to this arrangement, although he was not clear about what he did say in answer to plaintiff's attorney during this conversation.

Mr. Plant's office was in Sacramento, while Southern Pacific's main office was in San Francisco, and he forwarded a form of release and directions for its use. The release was executed by the proper officials of Southern Pacific and forwarded to the title company with instructions that it be recorded ''only upon holding in escrow the sum of $2,500 pending further written instructions from this office.''

Apparently it was during the time the release was in the hands of company officials in San Francisco for execution that Mr. Anderson discussed the effect of *Zeigler* v. *Bonnell, supra,*

with Mr. Plant in Sacramento. Although he was uncertain about his conversation regarding the lien after being told of the *Zeigler* case, Mr. Plant said his usual practice in such cases was to say: "I can't stop you from filing a lawsuit," and that he probably said this in answer to the statement by plaintiff's counsel that the validity of the lien would be tested in court.

The situation is complicated by the fact that plaintiff, relying upon the advice of her attorneys that the validity of the claim was to be litigated, went to the title company office and signed seller's instructions which read, in pertinent part: "demand of: Southern Pacific Company hold in file $2,500." Palpably, this instruction is unclear. Plaintiff interpreted it to mean that the $2,500 was to be held pending the outcome of a determination of the validity of the lien, while defendant insisted that it referred to the original agreement that the sum was to be held pending outcome of the appeal in the prior litigation.

Plaintiff filed this action in declaratory relief, asking the court to declare that after the death of her husband the recorded abstract of judgment for costs was no longer a valid lien against the real property, and to declare that Southern Pacific Company had no interest in the real property or the proceeds from the sale. Defendant answered, and also filed a cross-complaint for declaratory relief, alleging the judgment for costs, the recording of an abstract, the escrow established with North American Title Corporation, its refusal to issue a policy until the abstract was released, and an agreement to release the abstract in consideration for the withholding of $2,500. Defendant asked the court to declare that the money was held in escrow pending final determination of the appeal in the prior litigation.

The trial court decided in accordance with the contentions of Southern Pacific and, since by that time the judgment in the prior action had been affirmed on appeal, the trial court found that Southern Pacific was entitled to the money.

The authority of counsel for plaintiff and defendant to act on behalf of their clients in conducting the various negotiations is not questioned; it is the import of the negotiations that is in issue. The record amply supports the finding of the trial court that counsel for the respective parties orally agreed that Southern Pacific would file a partial release of the judgment lien in the escrow upon the condition the escrow holder withhold funds sufficient to satisfy the judgment, con-

tingent upon the outcome of the appeal in the prior action. However, the basic issue over which the dispute centers is whether counsel for plaintiff rescinded that agreement upon the ground of mutual mistake. (Civ. Code, §§ 1565, 1566, 1577, 1578.) The evidence on this point is conflicting. At the conclusion of the trial, plaintiff moved to file amended pleadings to conform to the proof by alleging that the original agreement· was entered into by reason of mutual mistake of fact·or law, or both, which voided consent, and that the agreement was rescinded. The trial court denied the motion, which plaintiff cites as an abuse of discretion, warranting a reversal, since the question was litigated but not decided.

· The proposed amendments were unnecessary, since the pleadings in declaratory relief of both plaintiff and defendant placed in issue all facets touching the disposition of the $2,500 in the hands of the title company. ■ The controlling principle is enunciated in *American Enterprise, Inc.* v. *Van Winkle*, 39 Cal.2d 210, wherein the court said, at page 219 [246 P.2d 935] :

''In an action for declaratory relief, the proper function of the court is to make a full and complete declaration, disposing of all questions of rights, status, or other legal relations encountered in construing the instruments before it.'' (See also *Merigan* v. *Bauer*, 206 Cal.App.2d 616, 621 [23 Cal.Rptr. 872] ; *Caffroy* v. *Fremlin*, 198 Cal.App.2d 176, 184 [17 Cal. Rptr. 668] ; *Dunlop* v. *Hersum Lbr. Co.*, 126 Cal.App.2d 815, 820 [273 P.2d 22].)

■ Such jurisdiction to completely settle all questions in a .declaratory relief action includes legal as well as equitable issues. (*State Farm etc. Ins. Co.* v. *Superior Court*, 47 Cal.2d 428, 432 [304 P.2d 13] ; *Veale* v. *Piercy*, 206 Cal.App.2d 557, 560 [24 Cal.Rptr. 91].) ■ The question that emerges is whether the court determined all questions placed in issue by the evidence. There was testimony that counsel for plaintiff gave·notice.of rescission on the grounds of a mistake of fact and of law. It appears that defendant's attorney did not accede to the rescission. The efficacy of the notice of rescission predicated upon Civil Code sections 1565, 1566, 1577 and 1578, and its effect, if any, are left undetermined. Plaintiff requested findings on this issue of rescission, pursuant to Code of Civil Procedure section 634, but the court refused to make them.

■ Where findings upon an issue are requested but not made, an appellate court cannot conclude from the record that

the trial court decided such issues against the complaining party. Code of Civil Procedure section 634 provides that where findings are requested on a pertinent issue, but none are made, an appellate court may not infer that "the trial court found in favor of the prevailing party on such issue." ▮ A judgment rendered without findings on all material issues must be reversed. (*Calloway* v. *Downie,* 195 Cal.App.2d 348, 352 [15 Cal.Rptr. 747].) Not only must the court make findings on all material issues, but the findings made must be definite and certain. (*Estate of McAfee,* 182 Cal.App.2d 553, 556 [6 Cal.Rptr. 79].)

The judgment is reversed.

Conley, P. J., and Gargano, J., concurred.